UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 25-WI-17 HEA |
| ) | |
| E&A AUTO CORES, LLC, ) | |
| ) | |
| Defendant. ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

**1. PARTIES:**

The parties are the defendant E&A AUTO CORES, LLC (hereinafter "E&A"), represented by defense counsel Adam Fein, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

A resolution of the members of E&A, attached and herein incorporated by reference, which bears a notary seal, authorizes and consents to the negotiation of plea between the Government and E&A, the making of the plea, and the sentencing of E&A, and certifies that all corporate formalities required for this authorization have been observed.

1

## 2. **GUILTY PLEA:**

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count One of the charge, the government agrees that no further federal prosecution will be brought in this District against defendant or any of its officers, directors, or employees relative to the defendant's transportation of stolen goods and money laundering from May 17, 2018, to May 28, 2021, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further recommend and agree that defendant pay a fine in the amount of $90,000, a forfeiture money judgment in the amount of $50,000, and a mandatory special assessment of $100. The defendant agrees to the payment of the mandatory special assessment, the forfeiture money judgment and fine at or before sentencing as directed by the Court. The defendant further agrees to the forfeiture of 269 catalytic converters that were seized on September 24, 2020.

## 3. **ELEMENTS:**

As to Count One, the defendant admits to knowingly violating Title 18, United States Code, Section 2314 (transportation of stolen goods), and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, catalytic converters were stolen;

*Two*, that catalytic converters the had a value of $5,000 or more;

*Three*, after the catalytic converters were stolen, the defendant caused it to be moved across a state line; and

2

*Four*, at the time the defendant caused the catalytic converters to be moved across a state line, the defendant knew that they had been stolen.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

E&A is a limited liability company that was formed in the State of Missouri on January 19, 2018. Edin Alic ("ALIC") is the organizer and registered agent of E&A. Between 2018 and 2021, E&A was in the business of buying and reselling catalytic converters. However, E&A did not have the necessary salvage license to conduct salvage business, including the sale of auto parts, in the state of Missouri.

A catalytic converter is an exhaust emission control device that reduces toxic gases and pollutants. Catalytic converters have been identified as lucrative items for theft due to the high resale value because of precious metals contained within the converters such as platinum, palladium, and rhodium. Once the catalytic converters are collected, they are often sold in bulk to processors and recyclers who, in turn, sell them to refiners to extract the precious metals. It is difficult to identify stolen catalytic converters as they are not stamped with VIN or identifying markings. In response to the increased thefts of catalytic converters the Missouri legislature passed RSMO 407.300 which mandates that dealers/purchasers of catalytic converters must keep a register of each transaction made.

Between May 17, 2018, and May 28, 2021, E&A received over $6.5 Million related to the business of selling catalytic converters into BMO Harris business bank account ending in #8251

held in name of E&A (the "BMO Account"). Most of this money was paid by recyclers, such as KLM Cores. Over the same time period, there was $4.2 Million in cash withdrawals from the BMO Account that was used to purchase catalytic converters from various individuals across the country, including in Missouri, Tennessee, Nevada, Washington and Idaho. E&A caused others to travel across the country to meet others in locations to purchase catalytic converters and transport them across state lines to a recycler.

In September 2019, E&A, through ALIC, contacted an individual in Tennessee who was known to buy and sell stolen catalytic converters. In text communications, this individual told ALIC that he was selling stolen catalytic converters. After receiving this information, ALIC met with this individual and purchased stolen catalytic converters from him.

In September 2020, the St. Louis City Police Department (SLCPD) received numerous anonymous tips concerning stolen catalytic converter transactions at the Life Storage facility at 3535 Lemay Ferry Road in the Eastern District of Missouri. While surveilling the location on September 24, 2020, SLCPD detectives observed ALIC's father and grandfather unload catalytic converters into a specific storage unit. Detectives approached the two men and discovered that they had 269 catalytic converters in their possession. The two men told the detectives that they were unloading catalytic converters into the storage unit for E&A. When asked for documentation of ownership, the men admitted that they had no receipts, logs, or records proving ownership. The detectives then called ALIC who was also not able to provide records for any of the 269 catalytic converters. Detectives then arrested ALIC's father and grandfather and seized the catalytic converters.

4

Between January 2021 and March 2021, detectives in King County, Washington, conducted multiple law enforcement operations involving the sale of stolen catalytic converters to three brothers residing in Iowa (the "Brothers"). Surveillance revealed that the Brothers would meet people at all hours of the night at random locations. On several occasions, the Brothers purchased catalytic converters after being told that they were stolen, stored them storage lockers, and later transport them to Iowa and other states using rental trucks.

E&A purchased stolen catalytic converters from Brothers on multiple occasions. For example, in February 2021, law enforcement observed one of the Brothers load stolen catalytic converters into a rental truck in Seattle, Washington, and transport them to his residence in Iowa. Law enforcement then observed the same Brother drive the rental truck to a storage facility in Iowa to meet with ALIC on behalf of E&A. At the storage facility, ALIC loaded the stolen catalytic converters into his van and transported them to St. Louis, Missouri. Thereafter, there was $153,000 wire from the BMO Account to the Brothers. As another example, in April 2021, the Brothers transported stolen catalytic converters from Kent, Washington, to Iowa. Upon arrival, one of those individuals called ALIC, who then withdrew $200,000 from the BMO Account. The next day, those individuals transported the stolen catalytic converters to St. Louis, Missouri, and delivered them to ALIC, acting on behalf of E&A, in a box truck in exchange for $200,000 in cash. On April 17, 2021, ALIC, acting on behalf of E&A, transported the stolen catalytic converters across state lines to Gainesville, Georgia, and delivered them to KLM Cores.

In sum, between March and April 2021, approximately $1 million was deposited into the BMO Account from KLM Cores related to the sale of catalytic converters. E&A admits that approximately 5% of catalytic converters that it purchased and sold to KLM Cores were stolen and

5

also transported across a state line, and that E&A transported these stolen catalytic converters across a state line knowing that they had been stolen. Thus, E&A admits that $50,000 of the monies deposited into the BMO Account constitutes proceeds traceable to the crime of interstate transportation of stolen property.

### 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty is a fine of not more than $500,000. Because the defendant is an organization, the defendant is only subject to a fine and not imprisonment. The maximum period of probation the Court may impose is five (5) years.

### 6. U.S. SENTENCING GUIDELINES: 2024 MANUAL:

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

   **a. Chapter 2 Offense Conduct:**

   **(1) Base Offense Level:** The parties agree that the base offense level is six (6), as found in Section 2B1.1(a)(2).

   **(2) Specific Offense Characteristics:** The parties agree that six (6) levels should be added pursuant to Section 2B1.1(b)(1)(D) because the loss was more than $40,000 but not more than $95,000. The parties further agree that two (2) levels should be added pursuant to Section 2B1.1(b)(15)(A) because the offense involved an organized scheme to receive stolen vehicle parts.

**b. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is fourteen (**14**).

**c. Guideline Fine Range:** The parties agree that, pursuant to Sections 8C2.4(a)(1) and (d), the base fine is $150,000. The parties further agree that, pursuant to Section 8C2.5, the defendant has a culpability score of 3 because the defendant organization fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct. As such, the parties agree that, pursuant to Sections 8C2.6 and 8C2.7, the guideline fine range is $90,000 to $180,000. The parties agree to recommend that the Court impose a fine of $90,000.

**d. Probation:** Pursuant to Sections 8D1.1(a)(2) and (6), and 8D1.2(a)(1), the parties agree to recommend a sentence of probation for one (1) year and that conditions of probation include payment of the $90,000 fine.

**e. Prior History:** The determination of E&A's prior history shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Reports as to the defendant's prior history and the applicable category.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

### 7. **WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:**

    **a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742. The defendant has also been fully apprised of the defendant's rights to challenge the debarment and disqualification, under 20 C.F.R. § 655.73, from filing any labor certification applications or labor condition applications with the Department of Labor and accepts such debarment and disqualification as the final agency order.

    **(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or non-application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

    **b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

8

c. **Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

8. **OTHER:**

   a. **Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   b. **Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   c. **Mandatory Special Assessment:** Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $100, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

   d. **Fines, Restitution and Costs of Incarceration and Supervision:** The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an

9

order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.

g. **Forfeiture:** The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities. Defendant specifically agrees to the forfeiture of the following: 269 catalytic converters seized on September 24, 2020. Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $50,000. The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence. The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture. The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners. The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon its interest in all seized items and further agrees that said

items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

## 9. <u>ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS</u>:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

## 10. VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

**12. NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

_10/24/2025_
Date

_____
KYLE T. BATEMAN
Assistant United States Attorney

_10/24/2025_
Date

_____
E&A AUTO CORES LLC
Defendant

_10/24/25_
Date

_____
ADAM FEIN
Attorney for Defendant

13